IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RHONDA L. CAHOON, ) | |
| ) | |
| Petitioner, ) | Case No. CV 05-465-S-LMB |
| ) | |
| v. ) | |
| ) | MEMORANDUM DECISION |
| JO ANNE B. BARNHART, Commissioner, ) | AND ORDER |
| Social Security Administration, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Currently pending before the Court is Rhonda L. Cahoon's Petition for Review seeking review of the final decision of Respondent denying her claim for Title XVI Supplemental Security Income payments. The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

**I.**

**ADMINISTRATIVE PROCEEDINGS**

Rhonda L. Cahoon ("Petitioner" or "Claimant") applied for supplemental security income benefits under Title XVI of the Social Security Act on July 7, 2003. (AR 54). Petitioner alleged disability beginning June 17, 2003 (AR 16) as a result of severe hip pain (AR 57). Petitioner's application was denied initially and again after reconsideration, after which Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). ALJ Kathleen H. Switzer held a hearing on February 15, 2005 at which time Petitioner appeared and testified.

MEMORANDUM DECISION AND ORDER - 1

Terry Marshall, C.R.C., a vocational expert, also testified. Jacob Bernhardt, a non-attorney, represented Petitioner at the hearing.

On April 18, 2005, the ALJ issued a decision denying Petitioner's claim because she found that based on Petitioner's age, educational background, work experience, and residual functional capacity, Petitioner is capable of performing a significant range of sedentary work and is capable of making a successful adjustment to work that exists in significant numbers in the national economy. The ALJ therefore concluded that Petitioner is not disabled as defined in the Social Security Act. (AR 21, 22).

Petitioner requested the Appeals Council review the ALJ's decision. The Appeals Council denied Petitioner's request on September 23, 2005 making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed this instant action. Petitioner argues that the ALJ 1) failed to find that she meets the criteria of Listing 1.02(A), 2) failed to provide specific, legitimate reasons supported by substantial evidence in the record for rejecting the opinion of Petitioner's treating physicians, 3) did not provide specific, clear and convincing evidence for rejecting Petitioner's testimony, and 4) that the testimony of the vocational expert cannot be given any weight because the ALJ failed to place the vocational expert under oath. *Petitioner's Brief in Support of Petition for Review* (Docket No. 9).

Petitioner requests that the ALJ's decision be reversed and an award for immediate payment of benefits be entered.

## II.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process. 20 C.F.R. §§ 404.1520, 416.920 (2005). The second part of that process involves a determination regarding whether the claimant has a "severe impairment." 20 C.F.R. § 416.905(a) (2006). If no "severe" impairment is found, the claimant will be found not to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

The issue presented in the instant appeal is whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and whether it is based on application of proper legal standards.

## III.

## DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ found Petitioner has not engaged in substantial gainful activity since the alleged onset of disability. (AR 21). The ALJ noted that Petitioner has never worked for any length of time at any given job, therefore there is no past relevant work to consider. (AR 17).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is in the negative, disability benefits are denied. 20 C.F.R. § 404.1520(c). Here, the ALJ found that Petitioner's bilateral congenital hip dysplasia with arthritic changes in the right hip is a "severe" impairment, based upon the requirements in the Regulations (20 C.F.R. § 416.920). (AR 17, 21).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).  In this respect, the ALJ stated that, while Petitioner has chronic joint pain of the hip with signs of limitation of motion, the medical record does not demonstrate the findings required to meet or medically equal Listing 1.02A.  (AR 17).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Petitioner has never worked for any length of time at any given job, therefore there is no past relevant work to consider.  In this instance, the Social Security Regulations direct the ALJ to consider that Petitioner is able to do unskilled work, as it requires little or no judgment and can be learned in a short period of time.  (AR 20).
In light of the foregoing, the ALJ found that Petitioner retains the residual functional capacity to perform sedentary work.  She cannot climb ladders, ropes, or scaffolding, and she can occasionally balance, stoop, kneel, crouch, and crawl.  She must avoid even moderate exposure to vibration and hazards such as machinery and heights and needs to work on paved or finished surfaces (not rough or uneven).  (AR 20).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  In this respect, the ALJ stated that even if Petitioner has no past relevant work to consider, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.  (AR 20).  Based upon Petitioner's residual functional capacity, she is capable of performing a significant range of sedentary work as defined in 20 C.F.R. § 416.967.  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  (AR 20).

Based on the testimony of the vocational expert, the ALJ concluded that, considering Petitioner's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy, such as an order clerk, call-out operator and touch-up screener, all sedentary, unskilled occupations.  The ALJ therefore concluded that Petitioner is not disabled as defined by the Social Security Act.  (AR 21).

  **B.** **<u>Analysis</u>**

    **(1)** **Step Three - Listing Requirements**

At step three, the ALJ was required to determine whether Petitioner's impairments meet or equal an impairment listed in the regulations.  Petitioner argues that the ALJ improperly concluded that Petitioner does not meet the criteria of Listing 1.02.  *Petitioner's Brief in Support of Petition for Review*, p. 2 (Docket No. 9).  Respondent acknowledges that Petitioner meets the requirements of the preliminary paragraph of Listing 1.02, which requires a major dysfunction of a major, weight-bearing joint.  *Respondent's Brief*, p. 6 (Docket No. 10).  Paragraph A of this

Listing, however, requires that the claimant's impairment result in "inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.

>   The inability to ambulate effectively is defined in § 1.00(B)(2)(b) as
>
>>  an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1). In addition, the regulations explain that:

>   To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, *examples of ineffective ambulation include, but are not limited to*, the inability to walk without the use of a walker, two crutches or two canes, *the inability to walk a block at a reasonable pace on rough or uneven surfaces*, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, *and the inability to climb a few steps at a reasonable pace with the use of a single hand rail*. *The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.*

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2) (emphases added). It is the application of this second subsection to her alleged symptoms that Petitioner challenges.

Petitioner argues that her inability to walk on rough or uneven surfaces and her inability to climb stairs satisfy the "inability to ambulate" criterion.[1] *Petitioner's Brief in Support of Petition for Review*, p. 9 (Docket No. 9).  At the hearing, Petitioner testified that she could not "walk a block on rough or uneven surfaces at a reasonable pace without assistance."  (AR 133). Specifically, she stated she would be able to walk only about five feet before stopping and she would start limping and her hip would start hurting.  (AR 144).  Petitioner also testified that she had to use a cane and handrail to climb stairs.  (AR 135).

Dr. Stanley Moss, Petitioner's treating physician, noted that Petitioner can only walk ½ a block without rest or severe pain and advised that Petitioner should avoid stairs.  (AR 116).  Dr. Moss opined that Petitioner is unable to "ambulate effectively" based on the criteria in § 1.00(B)(2)(b).  (AR 117).  Additionally, the ALJ determined that Petitioner could not work on rough or uneven surfaces.  (AR 20).  As set forth above, examples of ineffective ambulation contained in the regulations include the inability to walk a block at a reasonable pace on rough or uneven surfaces and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2).  Thus, there is

---

[1]  Respondent focused on Petitioner's use of a cane and did not specifically address this second subsection, other than to argue that it is not necessarily a contradiction for the ALJ to find that Petitioner could not work standing on rough or uneven surfaces all day, but that she might be able to walk a block or so over such a surface.  *Respondent's Brief*, p. 7 (Docket No. 10). Although it is not *necessarily* a contradiction, the ALJ did not explain why Petitioner could not work on such surfaces but could walk on them.

MEMORANDUM DECISION AND ORDER - 9

substantial evidence in the record indicating that Petitioner may meet the Listing requirements.[2]

Despite this evidence, the ALJ concluded that "[w]hile the claimant has chronic joint pain of the hip with signs of limitation of motion (see Ex. 1F), the medical record does not demonstrate the findings required to meet or medically equal this listing." (AR 17). Although the ALJ did not specifically evaluate Petitioners' ability to ambulate in the section titled "Impairment Listings," the ALJ noted the "inability to ambulate" requirement when making her determination (AR 17), and later in her decision noted Petitioner's use of a cane (AR 18). When assessing residual functional capacity, the ALJ also considered Dr. Moss's opinion that Petitioner lacked the ability to ambulate effectively, but decided not to give "full weight" to his opinion. (AR 19-20). Moreover, the ALJ found Petitioner to be "not fully credible" and disregarded her symptom testimony on this basis. (AR 18). Thus, if the ALJ properly discounted Petitioner's testimony and Dr. Moss's opinions regarding Petitioner's ability to ambulate, then the ALJ's determination that Petitioner did not meet the Listing may be upheld.

---

[2] There is also some evidence in the record that might support a determination that Petitioner does not meet the Listing requirements. As noted by Respondent, although Petitioner does apparently use a cane at times, (AR 84) (physician's report on August 4, 2003 that Petitioner "does not require any assistive device for ambulation") (AR 135) (Petitioner's testimony that she uses a cane), it does not occupy both of her hands. *See Respondent's Brief*, pp. 6-7 (Docket No. 10). Respondent also argues that Petitioner can effectively ambulate because she performs some household chores, can walk around the house, push a grocery cart, and help to put the groceries away. (Tr. 18). It is notable, however, that the regulations state "the ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2). Additionally, Petitioner testified that she only goes grocery shopping about twice a month and her ex-husband helps her. (AR 147). Accordingly, these activities alone, if Petitioner is found credible and Dr. Moss's opinion is not disregarded, are not sufficient to support the ALJ's determination.

As explained below, however, the ALJ did not properly reject Dr. Moss's opinions and the testimony of Petitioner. Additionally, it is not clear whether the ALJ considered Petitioner's inability to walk on rough or uneven surfaces or her difficulties on stairs when determining that Petitioner does not meet the inability to ambulate effectively requirement of § 1.00(B)(2)(b). For these reasons and for the reasons set forth below, this case will be remanded to the ALJ to consider whether the statements by Petitioner and Dr. Moss as to Petitioner's ability to walk on uneven or rough surfaces and maneuver on stairs are sufficient to place Petitioner within the definition of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2). Because it is a fact intensive inquiry and there is information in the record that might support the ALJ's determination if the testimony of Petitioner and Dr. Moss are appropriately discounted on remand, the decision will not be made in the first instance here as to whether Petitioner meets the Listing requirement.

        **(2)**    **Testimony of Petitioner's Treating Physician**

Petitioner argues that the ALJ failed to provide specific, legitimate reasons supported by substantial evidence in the record for rejecting the opinion of Petitioner's treating physicians. *Petitioner's Brief in Support of Petition for Review*, pp. 10-12 (Docket No. 9). Specifically, Petitioner argues that the ALJ improperly rejected the opinions of Dr. Moss that Petitioner meets the criteria of Listing 1.02, cannot ambulate effectively, and would be absent from work more

MEMORANDUM DECISION AND ORDER - 11

than four times per month.[3]  *Id.* at p. 11.

In according "diminished weight" to Dr. Moss's opinions on these issues, the ALJ explained that they "indicate very extreme limitations that are unsupported by the objective evidence, [are] inconsistent with the claimant's testimony at the hearing," and are "inconsistent with the claimant's activities of daily living as demonstrated in the record."  (AR 19-20). Although the ALJ does not specify how the opinions of Dr. Moss are inconsistent with the objective evidence or claimant's activities, earlier in the decision she set forth claimant's activities and described the medical findings of an examining doctor, Richard Radnovich, D.O. Accordingly, this information will be considered to determine whether it supports the ALJ's rejection of Dr. Moss's opinion.

The Ninth Circuit has held that a treating doctor's opinion is entitled to special consideration and weight:

> The medical opinion of a claimant's treating physician is entitled to "special weight."  The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual."

*Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  However, a "treating physician's opinion on the ultimate issue of disability is not necessarily conclusive."  *Id.* at 762 (citations omitted).  To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Bayliss v.*

---

[3]  Dr. Moss's assessment of Petitioner's likely absences from work is important because the vocational expert testified that an inability to attend work three or four days per month would impact an individual's ability to perform all jobs in the national economy.  (AR 151).

MEMORANDUM DECISION AND ORDER - 12

*Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "[T]he mere absence of a corroborating opinion cannot in itself constitute a conflict among the medical opinions." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

If the treating doctor's opinion is contradicted by another doctor's opinion, however, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* "Substantial evidence means more than a scintilla, but less than a preponderance." *Frost v. Barnhart*, 314 F.3d 359, 366 (9th Cir. 2002). "To find substantial evidence, [t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 367 (quoting *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (internal quotation marks omitted)). "While inferences from the record can constitute substantial evidence, only those reasonably drawn from the record will suffice." *Widmark*, 454 F.3d at 1066 (citation and internal quotation marks omitted).

In finding a lack of objective medical evidence to support Dr. Moss's opinions, the ALJ determined that the "[m]edical reports and other examinations of record show a degree of limitation, but not to the point suggested by Dr. Moss." (AR 20). The only medical evidence considered by the ALJ in her decision, other than Dr. Moss's reports, is the report of Dr. Richard Radnovich, an examining physician, who noted during his examination that Petitioner "is able to move about the examination room without difficulty, on and off of the examination table with

MEMORANDUM DECISION AND ORDER - 13

ease," and that "she does not require any assistive device for ambulation."[4]  (AR 84).  Dr. Radnovich opined that "[j]umping, crawling, squatting, and excessive stairs or ladders even infrequently would be inadvisable just based on her surgical history and arthritic changes."  (AR 85).  Dr. Radnovich also explained that Petitioner has "significant problems with her hips," but "mentation, sitting, speaking, traveling, handling find objects, and hearing are unimpaired."  (AR 85).

      Significantly, Dr. Radnovich did not assess whether Petitioner could walk or work on uneven or rough surfaces or how many days per month she may need to miss work because of her condition.  Dr. Radnovich's observations that Petitioner's ability to sit and travel are unimpaired and that she was able to move around the examining room without difficulty do not contradict Dr. Moss's opinion that Petitioner may need to be absent from work more than four days per month because of her limitations.  Thus, Dr. Moss's opinion on this issue may be rejected only by clear and convincing evidence.

      Dr. Radnovich's observation that Petitioner was able to move around the examining room without difficulty and had an unimpaired ability to travel, however, do implicitly contradict Dr. Moss's opinion that Petitioner was unable to ambulate effectively.  Accordingly, the Court will consider whether the ALJ provided specific and legitimate reasons that are supported by substantial evidence for rejecting this particular opinion of Dr. Moss.

---

[4] It is notable that Dr. Radnovich made this assessment before Dr. Moss prescribed use of a cane for Petitioner.

MEMORANDUM DECISION AND ORDER - 14

When rejecting Dr. Moss's opinions, the ALJ simply cited a lack of evidence supporting the limitations assessed by Dr. Moss without providing specific reasons to explain why the limitations were unsupported, especially considering that the ALJ herself determined Petitioner could not work on rough or uneven surfaces.  In addition, Dr. Radnovich noted Petitioner's "significant problems with her hips," (AR 85), but did not provide a detailed diagnosis on Petitioner's capabilities as did Dr. Moss.

Although Dr. Moss did not specifically explain the basis for his assessments of Petitioner's limitations, there is ample evidence in the record explaining her hip problems.  Dr. Moss's treatment notes from October 14, 2003 indicate that Petitioner's left hip showed "significant progression of the degenerative arthritis," that she was "just about down to bone on bone," and that he was prescribing Vioxx and use of a cane.  (AR 91-92).  Shortly after this visit, on November 6, 2003, Dr. Moss submitted a letter explaining that Petitioner "has no limitation as far as sitting or very limited walking in a sedentary type occupation but she does have [limits] as to how far she can walk, how long she can stand and lifting."  (AR 89).  Dr. Moss continued that she "would be limited to walking more than just occasional walking in a sedentary type occupation."  (AR 89).  He also noted that Petitioner "walks with a limp" and should "avoid excessive stairs."  (AR 89).

One year after Dr. Moss provided this letter, he performed a residual functional capacity assessment detailing Petitioner's limitations, including her inability to walk more than ½ a block on uneven or rough surfaces, her inability to effectively ambulate, and his opinion "based on [his] experience with the patient" and the objective medical and clinical findings, that Petitioner

MEMORANDUM DECISION AND ORDER - 15

is likely to be absent from work more than four times per month. (AR 117). These later opinions are not inconsistent with Dr. Moss's earlier letter or his treatment notes and nothing in Dr. Radnovich's assessment or the ALJ's decision provides specific and legitimate reasons for rejecting Dr. Moss's opinions.

As to the noted inconsistencies between Dr. Moss's opinions and Petitioner's daily activities, the ALJ did not explain how Petitioner's daily activities demonstrated that she can walk more than ½ a block on rough or uneven surfaces or how she will not miss more than four days of work per month. The ALJ described Petitioner's typical day, in which she walks a few steps to the porch to check the weather (AR 18, 138), unloads the dishwasher (but does it in two segments instead of all at one time) (AR 18, 139), lets her dogs out, visits on the telephone with her children and sometimes in person with friends, and watches television (AR 18). Petitioner also grocery shops with her ex-husband twice a month, "pushing the cart while he loads and unloads it, and helps put the groceries away."[5] (AR 19). Nothing in this largely sedentary lifestyle is inconsistent with Dr. Moss's opinions, nor do Petitioner's activities amount to substantial evidence to support the ALJ's rejection of Dr. Moss's opinions.

For all of these reasons, this case will be remanded to the ALJ for a consideration of all of the medical evidence in the record. Should the ALJ determine that Dr. Moss's opinions as the treating physician should be disregarded, she should support this finding by specific and substantial evidence clearly set forth in her decision.

---

[5] This information also provides some support for a determination that Petitioner is able to ambulate effectively. Again, however, the regulations provide that "the ability to walk independently about one's home without the use of assistive devices does not, *in and of itself*, constitute effective ambulation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2) (emphasis added).

### (3) Petitioner's Credibility

Petitioner also argues the ALJ did not provide specific, clear and convincing evidence for rejecting Petitioner's testimony. *Petitioner's Brief in Support of Petition for Review* (Docket No. 9). The ALJ found Petitioner's testimony to be "not fully credible in that her symptoms are not consistent with the objective medical evidence." (AR 18). The ALJ explained: "This is due, in part, to the fact that, at the hearing, claimant's description of her activities of daily living was not indicative of a totally disabled individual but rather of one who could perform at least the sedentary work suggested by the vocational expert." (*Id.*). However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (determining the ALJ erred in basing credibility determination on the petitioner's ability to carry out certain routine tasks where the petitioner's daily activities were actually quite limited and carried out with difficulty).

The second basis for discrediting Petitioner's testimony was the ALJ's observation that "there is very little objective basis to support claimant's alleged chronic functional limitations due to pain" and "[w]hat evidence there is is sporadic and does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or that she has limitations greater than those determined in this decision." (AR 18). As to this second basis, it impermissibly discounts Dr. Moss's opinions as to Petitioner's limitations, as discussed above.

MEMORANDUM DECISION AND ORDER - 17

In short, the ALJ has not stated "specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Although the ALJ is in the best position to make credibility determinations, here the ALJ did not sufficiently support her credibility assessments. An ALJ "must identify what testimony is not credible and what evidence undermines the Petitioner's complaints"; "[g]eneral findings are insufficient." *Lester v. Chater*, 81 F.3d at 834. Because the ALJ did not make these specific findings here or support her decision with substantial evidence, the ALJ's credibility determination is reversed and this action remanded.

### (4)   Vocational Expert's Testimony

Petitioner's final argument is that the testimony of the vocational expert cannot be given any weight because the ALJ failed to place the vocational expert under oath in violation of Federal Rule of Evidence 603. *Petitioner's Brief in Support of Petition for Review*, p. 15 (Docket No. 9). The Federal Rules of Evidence, however, "do not apply to the admission of evidence in Social Security administrative proceedings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005). *See also* 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 404.950(c), 416.1450(c) ("The administrative law judge may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court."). Accordingly, the ALJ's decision will not be reversed on this basis.

IV.

CONCLUSION

In conclusion, the reasons given by the ALJ for rejecting Petitioner's symptom testimony and the assessments of her treating physician were not sufficiently specific and were not supported by substantial evidence. Although the factors of Petitioner's daily living may be appropriately considered in ruling on Petitioner's credibility, *see, e.g., Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 853 (9th Cir. 1996), here, those factors were not sufficiently supported by the record evidence and explained by the ALJ. Additionally, the opinions of a treating physician may be rejected only when the specific reasons for doing so are set forth. It isfor these reasons that it is necessary to remand this action for further consideration by the ALJ.[6]

---

[6] The Court notes that Petitioner has requested a remand with direction to award benefits and not for further consideration by the ALJ.
> [A] court should credit improperly rejected evidence and remand for an award of benefits when:
> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003). In the present action, however, there are issues remaining to be resolved, such as whether Petitioner is unable to ambulate effectively and therefore disabled under Listing 1.02 and whether absenteeism from work would *eliminate* Petitioner's ability to perform *all* jobs in the national economy. (*See* AR 151) (testimony of vocational expert stating that absenteeism would "impact" the ability to perform all jobs in the national economy without explaining what impact it would make or whether it would disqualify Petitioner from performing any job). Accordingly, it also is not clear from the record that the ALJ would be required to find the claimant disabled and award disability benefits. *See, e.g.*, *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (remanding for the ALJ to repeat the step four analysis and articulate specific findings for rejecting the petitioner's pain testimony and the testimony of the lay witnesses); *Bunnell*, 336 F.3d at 1116 (determining that it was not clear from the record that an administrative law judge would be required to find the claimant disabled and award disability benefits).

MEMORANDUM DECISION AND ORDER - 19

## V.

## ORDER

For the reasons set forth above, Petitioner's request for review is GRANTED. The Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED: **February 21, 2007**.

_____
Honorable Larry M. Boyle
Chief U. S. Magistrate Judge